21-1118 Fresquez v. BNSF Railroad. Mr. Neal. Yes, Your Honor. Good morning. May it please the court. I'm Brian Neal for Appellant BNSF Railway. This morning, subject to questions from the court, I plan to focus on the first issue raised in our brief, judgment as a matter of law on the protected activity element in this FRSA retaliation case. I want to emphasize at the outset that even though we are here after a jury verdict, the issue I'll be talking about is a purely legal question, separate from the normal question of sufficiency of the evidence to support the verdict. That legal question is whether, in an FRSA retaliation case, a railroad employee can rely on conduct as protected activity that is covered by a specific protected activity provision that has special conditions and limits, and yet avoid meeting those special conditions and limits by disavowing that provision and proceeding under a more general provision. Is it okay? Does he prevail? If he proves either, this subsection A or subsection B? No, Your Honor. Our position is... He has to go with the harder one to prove, always? Well, he has to go with the more specific provision governing the facts that he's raising. And in this case, that is clearly B1C, which is a provision designed specifically for his type of job and for the activity that he complains about. And that specifically is refusing to authorize the use of track by a track inspector. Well, what's the function of A then? Is it just surplusage? I'm sorry? Why do we have A? Well, A is for any other railroad employee, lots of other situations. It's titled in general. And so those are general situations. B is more specific. And Congress set this up, I think intentionally, because track inspectors in their day-to-day work, they're always dealing with safety issues and authorizing track and legal requirements. So you have the question of whether, as Congress, do you want to protect an employee in the day-to-day functions of his job, where he can at least argue that he is essentially in a constant state of protected activity. And that comes up under other statutes, comes up in the First Amendment retaliation context, with the Garcetti case, if someone's acting pursuant to their work. And I've seen people argue that in similar cases to this. Well, Congress did say, yes, we are going to protect aspects of a track inspector's day-to-day work. But we recognize that there can be legitimate disagreements. We've got the potential for shutting down track and hurting the economy. So we're going to protect that conduct if and only if the track inspector meets these special requirements. If the track inspector is allowed to say, I don't want to deal with those special requirements, which in this case he admitted he could not meet, I'll just go under subsection A-1, because if I authorize that track, it would violate the law. And so I would be assisting in the violation of the law. That completely undoes the congressional dichotomy that's been set up. And I'll refer the court to the court's Elwell decision that we cited in our brief that happened to be authored by the then Judge Gorsuch, dealing with Title I and Title II of the Americans with Disabilities Act. Title II could apply to employment of public employees on its face. It was broad enough and general enough to do that. But the court looked at the structure and the text of the act and it applied the principle we're asking this court to apply, which is the RATLAX principle, that when you have a specific provision in a statute and the conducted issue falls into that specific provision, it governs notwithstanding the fact that a plaintiff may be able to point to more general language in the same statute and say, that covers me. How did this argument, how was it handled at trial? Did you object to instructions? Did you object to the court's rulings? It came up, it was preserved by judgment as a matter of law during trial. After trial, it was set out fairly extensively in the final pre-trial. And our scope of review for a JMLL? I'm sorry? Our scope of review for judgment as a matter of law? Well, it's de novo review, looking at the evidence presented to the jury. But, of course, this is a purely legal question that was preserved. And if the court agrees with us that the conduct had to fall under that specific provision and it's been admitted that the plaintiff can't admit, can't proceed under that specific provision, then the case never should have gone to the jury. There's no issue of deference to the jury verdict because it's a purely legal issue. And the judgment simply cannot stand. I want to back up a little bit and emphasize. In that review, don't we draw all reasonable inferences in the favor of the non-movement, non-movement that would be the plaintiff here? Certainly. And if we were talking about whether the plaintiff presented sufficient evidence of causation in a retaliation case, for example, I would certainly agree with that. Here, we've got a purely legal question. Can the plaintiff proceed? Well, don't we have facts, too? We have lots of facts. Well, we have lots of facts. And facts proven that could fall within either A or maybe B. Right. The same could be said in the Elwell case. There were facts proven that could have been easily fallen within Title II. And yet the court said it doesn't matter because under the statutory structure, a plaintiff bringing this kind of case, presenting these kinds of facts, can only proceed under the more specific provision, which in that case was Title I. Do you have a case that applies this act? It's not. No, I think this is going to be a question of first impression anywhere, as far as I can tell, under this particular statute. But I would encourage the court to read, again, the Elwell decision. It's very close, and it applies this principle from Radlax. And one of the quotes from the court is, however inclusive may be the general language of the statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment. And that's exactly what we have here. We have conduct that, yes, arguably could fall within the refusal to violate a law provision, but it also is much more specifically covered by the provision we rely on, B1C, which is specific to track inspectors and specific to authorizing the use of track. How about just respond to the plaintiff's argument that what he did was not a refusal to authorize. It was something else. I think plaintiff claims it was a refusal to authorize, but that he had no discretion in making the authorization because there was a legal requirement that prohibited him from authorizing it. And in that instance, I'd say there's no difference between he's just spinning it in a way to try to say that it doesn't involve a safety issue, which is what B1C concerns. But in fact, all of the questions about authorizing track are about hazardous safety conditions. The entire trial was the plaintiff saying that his views... How would that work if every safety violation is also, would also generate a, should generate a failure refusal to authorize? How do you, you're just chasing your tail then. No, in this situation involving a track inspector, there are special requirements that the track inspector, at least day in and day out, the track inspector's deciding whether to authorize track. And if the track inspector can just say, well, it's not about it being a hazardous safety condition, which is what B1C talks about. It's about this law. Well, all the laws are about hazardous safety conditions. And that means the track inspector never has to fall under the B1C requirement. And that completely undoes the dichotomy that Congress set up for this special situation, knowing that track inspectors deal with this and they would be in this constant state of protected activity if all they had to do is say, well, every time I did my job, I was refusing to violate the law. Well, oftentimes in this situation, you'll see the more general provision, if that's what you're really dealing with, say, except as provided in. Right. There's no question Congress could have been more specific about this. But I would say the same is true in the Elwell case again, and in numerous other cases. I don't want to focus too much on that case. We cited a number of other cases. But the same was true in Elwell, where you had Title I of the ADA, Title II. Congress easily should have said, all employment cases have to fall under Title I. They didn't say that. And so the court had to decide that. And it did so by looking at the text and the structure of the act, which is just as important as the text, and decided the way the statute is set up and the fact that if we agreed with the plaintiff's argument in that case, it would render superfluous a number of the employment requirements in Title I, specifically the requirements to go to the EEOC and limitations period and so on. Based on that, this court said, looking at the structure of the act, we're going to hold that the more specific provision is the one that the plaintiff has to proceed under. And that's all we're asking you to do in this case. Help me recall here, did the jury verdict ask the jury, or was there a special verdict form that asked the jury to determine whether or not A or B was violated? No, B1C was not submitted to the jury over our objection. So all that was submitted were the three provisions that Mr. Prescott has relied on, which is A1, A2, and B1A. Now, what I've been focusing on today is the refusal to reclassify. The court's seen in our briefs that we write down the protected activity with these three labels, refusing to reclassify, calling the FRA, and refusing to measure, which is what happened on the last event before he was removed from work. Refusing to reclassify actually picks up all of those. I think both sides have said they're all interrelated, interconnected. I think is the word that Mr. Fresquez uses. Now, in our brief, we have set out additional arguments as to calling the FRA and refusing to measure. And it's very simply put, look at his own testimony about those two things. And even if you wanted to treat those separately from the refusing to reclassify activity, they simply do not satisfy any of the specific protected activities set out in the statute. And in mentioning specific protected activities, you know, I do want to make the overarching point and I won't belabor it because it's in our brief. The statute is not like Title VII, where you have these broad categories like opposition or participation. You've got these specific delineations of protected activity. And it's critical that courts in these cases hold the plaintiff to proving the proper activity for the circumstances at issue. And the Supreme Court in the case that we've cited on page 17 of our opening brief, Digital Realty Trust, made very clear in the somewhat analogous context of SOX that when it comes to protected activity in these kinds of cases, close isn't good enough. You've got to decide, has the plaintiff actually satisfied the specific words in the statute? And then you layer on top of that, this legal question that I'm raising, which is that the only option for the plaintiff in this kind of case about classifying track has to be B1C because it is very specific to his job and his activity that's at issue in the case. We wouldn't go with your argument that he has to fall under B1C. Was there evidence here to support the violation under A? Well, we haven't challenged the retaliatory motive element of the case. And under A, if the court rejects our argument, then, you know, yes, under A, he has evidence that he claims to have... Reported violations of the rules and regulations. He was doing that, right? He, yes, that is what he claims. Yeah, and he claimed that when he saw these problems with tracks and he entered them on their data, they were then later removed by his supervisors? Right, but the Plaintiff's Council's representations at trial and the ruling by Judge Daniel on judgment as a matter of law limited him to one incident of protected activity, and that was May 5. So that's the ones that I've been focusing on. And what did... I thought it was an interesting ruling that the court said, well, we'll just look at May 2015 or 2016, but not May 2015. Right. That can be for background. Right. I don't know how you handled that at trial. Well, he just said that there wasn't sufficient evidence of causation, so he was ruling those out. They're not trying to reopen those. And he actually said May 5th of 2016 was the only protected activity. So with that, I'd like to reserve the rest of my time. Thank you, Counsel. Thank you. Mr. Hanson. Good morning, Your Honors. Adam Hanson on behalf of Appellate Brandon Fresquez. May it please the court. Brandon Fresquez stood up for safety and BNSF fired him because of it. Fresquez learned that his supervisors were engaged in an extraordinary fraud, systematically removing track defects from BNSF's reporting system without repairing them, allowing trains to run at dangerous speeds on defective tracks. But Fresquez refused to go along with this. BNSF's... Mr. Fresquez's supervisors manufactured a bogus charge and terminated him. This is a quintessential case of retaliation under the FRSA. None of BNSF's various attacks on the jury's verdict or the district court's order has merit, and this court owes substantial deference to both. I want to focus my attention today on the liability questions, but I'm certainly, given the breadth of the arguments and the claims of error that BNSF has raised, welcome any questions and interruptions. What's your response to the argument that the specific provision of the statute controls here and you never really tried to fit into that provision? Well, my intent was to start right there, so let's do that. The FRSA, through the amendments that Congress has given it over the years, there are a number of different ways to show protected activity. And the baseline rule is really straightforward. A single course of conduct in any civil case, in any criminal case, can in fact violate multiple legal provisions. That's why we have multiple count complaints. And if you look at the FRSA in this case, each prong has specific elements or specific statutory language. So, for example, 2109A1 deals with providing information to a supervisor or the FRA. That was violated here. 2109A2 deals with refusals to violate federal law. That was violated here. 2109B1A deals with reporting a safety violation or a condition. That was violated here. The problem with the intratextual argument that BNSF is raising is both a legal problem and a factual problem. So start with the legal problem. The first is, what BNSF is essentially arguing for is almost like a broad field preemption, where anything that has to do with or is one step removed from authorizing a track or authorizing a piece of equipment, somehow that means that that is the sole provision that that plaintiff can proceed under. And that's just not true. A plaintiff can articulate any violation of law that's covered by the unique elements of these different provisions. And why even have B1C? Well, that gets to my next point. So there's two statutory canons, I think, that are in play here, but ultimately illustrate the correct outcome. And the first is the superfluousness argument, right? So there are scenarios, it's not this case, but there certainly are scenarios where an employee might refuse to authorize a track. And doing so has no bearing on any of the other statutory provisions. It's not a report. It's not a violation of the law. It's just the inspector or the employee saying, you know what, in my professional judgment, I don't think that this equipment should be operating. I'm not going to authorize it. We agree. If that's the only provision that someone is proceeding under, then they have to meet the heightened requirements of that provision. But where we disagree is that anything remotely close to the B1C provision has some sort of a preclusive effect on the other provisions. So I think in response to the question, it's not at all superfluous. There are going to be many, many cases out there where the violation might only be, or the claimed conduct might only violate B1C, but not the others. Can you give us some examples that, real life, that we can see that? Yeah, I think the one in our brief is probably the best example. So there are, if you look at the regulations which were violated here, there are pockets of discretion. So one example is where you're dealing with a non-class defect. The employee or the inspector has the discretion to either remove the track from service immediately or allow the track to run for 30 days. And, you know, if the inspector says, well, in my judgment, the law will allow me to do this for 30 days, but in my professional opinion, the track should be taken out of service immediately, there's no violation of the law there. There's not necessarily providing information, if that's the only fact. There's not necessarily a report of anything. And so I think that's one example, but you certainly could hypothesize others. I think what B1C really... Well, and so that gets to the factual side of this. And, you know, I would respectfully disagree with that point. What this case is about is an ongoing conspiracy to remove track defects from BNSF's reporting system. Essentially take defects that the law requires that be reported, remediated, and retained in BNSF's records and just erasing them. That has all sorts of downstream consequences. It makes the tracks unsafe. It makes the trains unsafe. And so this case is not really about authorizing equipment. It's about blowing the whistle on this unlawful conduct of erasing these records. To prove under Section B, do you have to have immediate hazardous situation that causes, you know, great danger immediately? Is there some kind of difference there between A and B? Well, there's a difference between A and B. There's also a difference between B1A and B1B. So B1A does not require any immediate hazard or threats of bodily injury or death. And B1A was, in fact, proven in this case, and the jury agreed with us. It's B1B that has the more specific requirements. Turning back to the fact... And you concede you have not proven that section. We didn't attempt to prove that section. That's correct. So you say that this case is about the conspiracy to manipulate, is it Tim's, the recording provisions, the reporting. Is that how it was presented? Or... That's how it was presented. I thought it was presented more on the May 5th events. Well, what the district judge ruled is that the full course of conduct could be background evidence. But then the May 5th events were really the actionable events. But even focusing just on the May 5th events, it was all about removing the defects from the system. This is what Mr. Fresquez was concerned about. This is what he was concerned that his supervisor, Michael Paz, was trying to do on May 5th. There are other facts yet that fit into these other statutory categories of protected conduct. For example, Mr. Fresquez called the FRA and asked about what Mr. Paz, his supervisor, had proposed. And the FRA agreed with Mr. Fresquez. And so in many cases, you're not going to have a call to the FRA, which clearly fits within some of these other statutory provisions. The last thing I'd mention is just with respect to this general, specific canon that the NSF is invoking. The court was exactly right. In order for this canon to apply, you need a scenario where two different statutory directives point in two opposite directions, and they cannot be harmonized. You cannot comply with both A and B. And that's just not the case here. Here you have a scenario where the NSF is going to have a scenario where different facts, different circumstances, and different evidence could show, could reveal different outcomes for these types of statutory violations. So turning to the provisions that were violated in this case, I think helps illustrate why this goes beyond just a simple authorization case. So start with 2109A2. This is refusing to violate federal law. There are a number of federal laws that were violated here. CFR 49, CFR 213.9 is the regulation that deals with speeds and classes of track and the timing of removal of tracks. 213.233 deals with the schedule of track inspections, how to deal with repairs, and how to deal with defections, deviations, and 213.241 deals with inspection records. The NSF essentially concedes that all of these provisions were violated here. And so the district court was exactly right, that Mr. Fresquez, through his conduct, was refusing to go along with violating these federal regulations. That's a clear violation of A2. Similarly with A1, this is the provision that deals with providing information that the plaintiff reasonably believes is a violation of law, either to a supervisor or the FRA. In this case, Mr. Fresquez did both. He confronted his supervisor about the false repair reports. He called the FRA, and he reported his call with the FRA to his supervisor. And last, 2109B1A, which doesn't require a violation of law, simply reporting a hazardous safety condition. And Mr. Fresquez satisfied the elements of this requirement as well, when he reported the track defects, called the FRA, and confronted his supervisor. So we have fairly straightforward statutory violations, and in our view, no reason to ignore those statutory violations based on the intratextual reading that BNSF puts forward today. Could you turn to the same decision, defense? Why didn't the way this played out for termination break the causation chain from Paz's conspiracy, whatever, to the management? Happy to discuss the same decision defense. So I think there are four or five reasons why the same decision defense was not substantiated as a matter of law. So starting with the law, this defense, of course, incorporates the cat's paw theory of causation. So if even in a world where the ultimate decision maker was unaware of the bias of the lower level supervisor, you need a truly independent investigation to break that chain of causation. We don't have that here. We have Mr. Miller, the ultimate decision maker, who knew about Mr. Fresquez's conduct, was the recipient of his union complaint, who spoke to Mr. Fresquez's immediate supervisors, who provided advice about how the disciplinary hearing would proceed. We've also got evidence of deceit, frankly, false testimony by Mr. Fresquez's immediate supervisor in the disciplinary hearing. And the upper level decision makers simply relied on that. There was no independent investigation. There were other procedural problems. Are you saying that the final decision makers, the upper level decision makers, we sort of impute the knowledge of Paz and Carpenter to them? Yes, although it's not even necessary to do that under the facts of this case. So we sort of have a double win here, right? Because the doctrine of the cat's paw allows a plaintiff to prevail even in a hypothetical case where the upper level decision maker is truly the man in the rubber room with the head in the sand who knows nothing, as long as there hasn't been a truly independent investigation to break that chain of causation. We don't have anything approaching that here. But more than that, we've got direct knowledge of what was going on by the ultimate decision maker for the reasons that I just outlined. Ms. Defelson and Mr. Miller, who made the ultimate decision, were familiar with Mr. Fresquez's complaints. They were familiar with what the supervisors were doing. They signed off on an outcome that was an over-the-top punishment compared to what other employees at BNSF had received. There's the temporal proximity between the protected conduct and the adverse action, which was one day in this case. All of these things, and then I should add, the post-termination conduct, there was bragging on the part of Mr. Fresquez's supervisor to other employees, bragging as a warning, saying, if you don't go along with what I'm suggesting, you're going to meet essentially the same fate as Mr. Fresquez. So all of these factual and legal problems stand as a barrier to judgment as a matter of law on the same decision defense. And before you sit down, the Compensatory Damages Award and the evidence supporting it, it's a high award and thin evidence. Can you help me resolve some of my doubts about the sufficiency of the evidence that you're talking about? Sure, and I'll do my best to be brief. The testimony showed that this was an extraordinarily dramatic event for Mr. Fresquez. He didn't just lose his job. He lost his career. He wasn't able to go back to, frankly, a very specialized role as a track inspector. So he began a new career as a building inspector, and that's fine, but he earns less money in that role. He testified to the tremendous stress that it had on him and his family. He spoke about the pain and the strife of having explained to his son that his son should eat all the food he could when visiting his grandparents because Mr. Fresquez couldn't afford to buy food and how much anxiety that caused him. He gained 60 pounds, a significant amount of weight, lost his ability to sleep, stopped doing things that he used to enjoy, like coaching his son's team. And so the evidence in this case, I'll just stop by saying that I think it goes far beyond what you might think of as a standard garden variety emotional distress case. What did you ask for a specific amount? I don't believe so. I don't believe so. And of course, and we've cited in a 28-J letter this Court's Cassius decision upholding a million-dollar award fairly recently, this Court's job is even more circumscribed here than on some of the other things we're here to discuss today. The District Court and this Court owed deference to the jury. This Court, of course, owes double deference to the District Court in its remitted our decision. Unless the Court has further questions, I'll ask the Court to affirm the District Court's judgment. Mr. Neal, you had some rebuttal. Could you give him a minute, please? Let me try to make one point in the short time remaining. The argument that you just heard about protected activity is exactly what we addressed in our reply brief. There are a lot of arguments about there was protected activity everywhere. It was all about PNSF violating the rules. This is not an enforcement action by the FRA against PNSF or a private citizen for allegedly violating these rules. It's a retaliation case, so you have to show protected activity and retaliation for that protected activity. At trial, the judge asked Mr. Fresquez's counsel specifically what protected activity they were relying on. He recited a few things, mostly from 2015. The judge later granted judgment as a matter of law on those 2015 events. Those were out of the picture as far as liability. They could be considered, as background circumstances, just like an untimely act under Title VII, but they can be used to show liability as the specific protected activity. Then the judge said the only thing you can rely on, Mr. Fresquez, is the May 5th event. And what we've heard here is an attempt to expand and get you to not focus on those very limited circumstances of May 5th. If you do that and apply the legal standards we've asked you to apply, the only answer here is to reverse and render judgment for PNSF. Thank you, counsel. Appreciate the argument. You're excused, and the case shall be submitted.